**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**EDWARD O'SHEA,**

                                        **Plaintiff,**

        **vs.**
                                                        **1:22-CV-666**
                                                        **(MAD/CFH)**
**CITY OF KINGSTON,**

                                        **Defendant.**

_____

**APPEARANCES:**                               **OF COUNSEL:**

**THE LAW OFFICE OF RAYMOND J. IAIA**    **RAMYOND IAIA, ESQ.**
115 Green Street
Kingston, New York 12401
Attorneys for Plaintiff

**COOK, TUCKER LAW FIRM**                **MICHAEL T. COOK, ESQ.**
85 Main Street
P.O. Box 3939
Kingston, New York 12401
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On June 22, 2022, Defendant City of Kingston ("Defendant") removed this action to federal court by filing a notice of removal pursuant to 28 U.S.C. §§ 1441(a) and (b), 1443 and 1446. *See* Dkt. No. 1. Plaintiff Edward O'Shea ("Plaintiff") initially brought suit in the Supreme Court of the State of New York, County of Ulster. *See id.* at ¶ 2. Generally, Plaintiff alleges that Defendant violated his constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution. *See id.*; Dkt. No. 11 at ¶ 1. Plaintiff also asserts claims under the New York State Constitution and common law. *See id.*

On August 8, 2022, following a pre-motion conference with the parties, the Court granted Plaintiff's request to file an amended complaint.  *See* Dkt. 8/08/2022 Text Notice Entry. Thereafter, Plaintiff filed an amended complaint, and on September 26, 2022, Defendant filed the instant motion to dismiss.  *See* Dkt. Nos. 11-12.  Plaintiff opposes the motion and Defendant has replied.  *See* Dkt. Nos. 15-16.

For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## II. BACKGROUND

According to Plaintiff, he is "the owner in fee simple of real property with an address of 104 West Pierpont Street, City of Kingston, County of Ulster" in New York.  Dkt. No. 11 at ¶ 7. Plaintiff's property is "located in the Historic Rondout Waterfront District and [is] believed to date back to the nineteenth century."  *Id.* at ¶ 8.  Plaintiff has maintained the property since purchasing it in or around 1985.  *See id.* at ¶ 10.  Over the years, Plaintiff has, *inter alia*, replaced the property's "roof, siding, windows, furnace, panel box, kitchen[,] bathroom, [and] flooring[.]" Dkt. No. 11 at ¶ 11.  Plaintiff has also painted the property "more than once."  *Id.*  Plaintiff has rented the property to city residents and families as "clean, safe, and affordable housing[.]"  *Id.* at ¶ 12.

Defendant is a municipal corporation that owns and maintains West Pierpont Street.  *See* Dkt. No. 11 at ¶ 13. Defendant also owns and maintains the "bluestone sidewalk" fronting Plaintiff's property.  *Id.* at ¶ 14.  Defendant has "caused significant damage" to Plaintiff's property by enabling "water to pool in a level or moderately depressed portion of the bluestone sidewalk." *Id.* at ¶ 15.  To Plaintiff's knowledge, "the most significant damage . . . is the deterioration of the home's stacked stone foundation due to the intrusion of water."  *Id.* at ¶ 16.  The pooled water has also caused "sinkholes."  *Id.*

2

Plaintiff retained professional engineer Michael E. Gillespie ("Mr. Gillespie") to determine the cause of the damage to his property. *See* Dkt. No. 11 at ¶ 17. Mr. Gillespie conducted three site visits. *See id.* ¶ 18. In relevant part, Mr. Gillespie concluded that the property is subject to "drainage impacts" that are "a direct result of runoff from W. Pierpont Street (and the adjoining road networks)[.]" *Id.* Mr. Gillespie also found that "[t]he curb height . . . is essentially the same height as the road," thus diverting the natural runoff onto Plaintiff's property. *Id.* Moreover, the "runoff from upland properties and road networks directly discharges onto West Pierpont," collecting in front of Plaintiff's property and "causing further damage." *Id.* at ¶ 23.

Most critically, Mr. Gillespie determined that "the intrusion of stormwater runoff to the northeast corner . . . can be directly related to future degradation of the easterly foundation wall failure in addition to creating impacts at the northeast corner of the building." Dkt. No. 11 at ¶ 19. The latter finding "is significant because it means that the 'drainage impacts' is a chronic problem unless [] Defendant repairs its road, its curb, and its foundation." *Id.* at ¶ 20.

On or about January 5, 2021, Defendant served a "Notice of Violation" upon Plaintiff. Dkt. No. 11 at ¶ 25. Although the notice purported to be a "garbage complaint," it alleged that "at 104 W Pierpont Street the sidewalk was deteriorated and nonaccessible [sic] creating a hazardous and unsafe condition for pedestrians. The sidewalk shall be rehabilitated or replaced. Please contact this office to obtain a sidewalk permit." *Id.* at ¶ 26. The following day, January 6, 2021, Defendant served "another Notice of Violation" upon Plaintiff. *Id.* at ¶ 27. "Despite this second notice also purporting to be a 'garbage complaint,' the body of the complaint revealed that it was in fact a complaint 'regarding the sinking sidewalk[,]' and demanding Plaintiff 'obtain the necessary permit(s) to make the repairs as soon as possible.'" *Id.* at ¶ 28.

Based on Mr. Gillespie's findings, even if Plaintiff were to undertake the sidewalk, curb, and/or street repairs, such efforts will be "futile" if Defendant does not "repair the cause thereof[.]" Dkt. No. 11 at ¶ 29.  Furthermore, "Defendant is aware that repairs to the sidewalk, curb, and street made by [Plaintiff] would have such a significant economic impact on him as to cause a total economic loss[.]." *Id.* at ¶ 30.  Notwithstanding, "[d]espite having caused the problems, and despite actual notice thereof[,]" Defendant has "assessed multiple violations against [] Plaintiff and demanded [that he] make repairs to the sidewalk[.]" *Id.* at ¶ 24.

Notably, the violations resulted after an unnamed city resident complained to Defendant about "a former tenant" of Plaintiff's.  Dkt. No. 11 at ¶ 43.  The complaining resident lives near Plaintiff's property and "maintains a personal and/or professional relationship with employee(s) and/or agent(s) of [Defendant]." *Id.* at ¶ 44.  Also, on some unspecified date, Defendant purportedly "condemned" Plaintiff's property, rendering it "uninhabitable," and thus resulting in "loss of use" and "income derived therefrom." *Id.* at ¶ 31.  Plaintiff alleges that the "violations and condemnation were pretextual and were issued and undertaken because personnel within [Defendant's] building department were friendly with the complaining resident." *Id.* at ¶ 46.

Pursuant to both the United States and New York State constitutions, Plaintiff alleges that Defendant's actions "amount[] to *de facto* Unconstitutional Taking." Dkt. No. 11 at ¶¶ 30, 52-57. Likewise, Plaintiff alleges that he has been unconstitutionally denied equal protection of law because Defendant "is subjecting Plaintiff to differing and unique treatment compared to others similarly situated" and that the violations "were unreasonable, arbitrary, [and] have no fair nor rational relationship to [Defendant's] legitimate legislative objectives[.]" *Id.* at ¶¶ 47-48, 62-65. Plaintiff also claims that he has been unconstitutionally denied certain due process rights. *See id.* at ¶¶ 58-61.

4

In addition to Plaintiff's federal and state constitutional claims, he alleges that Defendant negligently caused damage to the property's "foundation, the adjacent sidewalk, property between the home and the sidewalk as well as other ground surrounding the subject home" by means of "improper" road, sidewalk, and curb construction and/or maintenance. Dkt. No. 11 at ¶¶ 21-22, 67. Plaintiff also alleges that Defendant "is liable for a private [and a public] nuisance" under state law. *Id.* at ¶¶ 69, 71.

## III. DISCUSSION

**A.      Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

**B.    42 U.S.C. § 1983**

Section 1983 provides plaintiffs with a cause of action against government officials who, acting under the color of government authority, have subjected a plaintiff to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see also Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001).  Section 1983 is "not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979)).  To establish a Section 1983 claim, a plaintiff must demonstrate two elements: "(1) 'the act complained of was committed by a person acting under color of state law'; and (2) 'this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Greenwich Citizens Comm. v. Counties of Warren Indus. Dev. Agency*, 77 F.3d 26, 29-30 (2d Cir. 1996) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

In this case, Plaintiff has named the City of Kingston, a municipal corporation, as the sole defendant.  The Supreme Court first recognized Section 1983 actions against municipal entities in *Monell v. Dept. of Social Services of City of N.Y.*, 436 U.S. 658 (1978) ("*Monell*").  Generally, to establish municipal liability for any constitutional deprivation, "a plaintiff is required to plead and prove three elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020).  A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.  *See e.g., Iacvoangelo v. Corr. Med. Care, Inc.*, 624 Fed. Appx. 10, 13-14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Village of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions); *Hansen v. Wakins Glen Cent. Sch. Dist.*, 832 Fed. Appx. 709, 715 (2d Cir. 2020) (affirming the district court's finding that "restrict[ing] access to school property on only four other occasions in the more than ten years [the defendant] served as a [s]uperintendent" did not amount to a custom or policy).

Importantly, in a *Monell* case "municipal liability . . . may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of [individual state actors]." *Barrett v. Orange Cnty. Hum. Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999); *see also Rutigliano v. City of N.Y.*, 326 Fed. Appx. 5, 9 (2d Cir. 2009). For instance, "even in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, 'the combined acts or omissions of several employees acting under a governmental policy or custom may violate' those rights." *Barrett*, 194 F.3d at 350.

The Court construes the amended complaint as generally asserting three federal constitutional violations: (1) a taking of property without just compensation; (2) a denial of substantive and/or procedural due process; and (3) a denial of equal protection. The Court will address each claim in turn.

### 1. Takings

To state a takings claim under Section 1983, a plaintiff must show "(1) a property interest (2) that has been taken under color of state law (3) without just compensation." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 452 (S.D.N.Y. 1998) (citing *HBP Assoc. v. Marsh*, 893 F. Supp. 271, 277 (S.D.N.Y. 1995)). "The Supreme Court has recognized two branches of Takings Clause cases: physical takings and regulatory takings." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)). Physical takings "occur when the government physically takes possession of an interest in property for some public purpose." *Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). "A regulatory taking, by contrast, occurs where even absent a direct physical appropriation, governmental regulation of private property

'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *1256 Hertel Ave.*, 761 F.3d at 263 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)).

"Importantly, 'takings liability does not arise from government inaction or failure to act.'" *Drake v. Village of Lima*, 530 F. Supp. 3d 285, 291 (W.D.N.Y. 2021) (quoting *St. Bernard Par. Gov't v. U.S.*, 887 F.3d 1354, 1362 (Fed. Cir. 2018)).  "In other words, '[w]hile the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, it does not state a takings claim.'" *Id.*

Before the Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S.Ct. 2162 (2019) ("*Township of Scott*"), the law in the Second Circuit had been that "a 'taking' is not 'without just compensation' under section 1983 unless a plaintiff has exhausted all state remedies that may provide just compensation."  *Id.* (citing *Williamson Cty. v. Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985)); *see also Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) ("Compensation must first be sought from the state if adequate procedures are available") (citation omitted), *cert. denied*, 519 U.S. 808 (1996).  It would therefore have been relevant that "New York has established a procedure for pursuing just compensation[.]"  *Frooks*, 997 F. Supp. at 453 (citing *HBP Assoc.*, 893 F. Supp. at 277); *see also Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 514 (2d Cir. 2014) ("'It is well-settled that New York State has a reasonable, certain and adequate provision for obtaining compensation'") (quoting *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 157 (E.D.N.Y. 2006)).

In *Township of Scott*, upon reconsideration of *Williamson County*, the Supreme Court overruled the state exhaustion requirement, deeming it "an unjustifiable burden on takings plaintiffs[.]" *Township of Scott*, 139 S.Ct. at 2167-68.  It is now the case that "[a] property owner

has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.* at 2167.  While this does not require that the government furnish such just compensation as required by the Fifth Amendment in advance of a taking, it does allow an aggrieved property owner to directly "bring his claim in federal court under [Section] 1983." *Id.* at 2168.  In other words, "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 2170.  Thus, the constitutional right "to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.*

In this case, the Court finds that Plaintiff has failed to adequately allege a Section 1983 takings claim.  As a matter of clarification, the amended complaint does not identify or challenge any statute, regulation, or ordinance that has "go[ne] too far" in restricting his ability to use his own property.  *1256 Hertel Ave. Assocs.*, 761 F.3d at 263 (citation omitted).  Hence, the court views the amended complaint as asserting only a physical takings claim.

The Court notes that there is no allegation that Defendant has taken physical possession of Plaintiff's property; rather, Plaintiff alleges that Defendant enabled the stormwater intrusion onto the premises, interfering with his use and causing damage.  *See* Dkt. No. 11 at ¶¶ 15-24. Specifically, he alleges that the stormwater runoff and consequent damage are the result of Defendant's improper construction and maintenance of the road, sidewalk, and curb fronting his property.  *See id.*  Moreover, Plaintiff alleges that requiring him to make the necessary repairs, as directed by Defendant, "would have such a significant economic impact on him as to cause a total economic loss thereby amounting to a *de facto* Unconstitutional Taking." *Id.* at ¶ 30.  While these allegations may constitute a tort claim under state law, it is well-established that they do not amount to a cognizable theory under the Fifth Amendment Takings Clause.  *See Drake*, 530 F.

Supp. at 291 (citation omitted).  Thus, Plaintiff's Section 1983 takings claim must be dismissed to the extent it concerns the alleged stormwater intrusion and related damage.

Additionally, Plaintiff challenges a supposed "condemnation" of his property.  Dkt. No. 11 at ¶ 31.  But as Defendant argues, Plaintiff has failed to include any date as to when this act allegedly occurred.  *See* Dkt. No. 12-1 at 10-11.  In his memorandum of law, Plaintiff asserts that "the date of the condemnation is within the knowledge of Defendant and should be disclosed to Plaintiff and this Court."  Dkt. No. 15 at 8.  Moreover, Plaintiff apparently suspects that "the property was condemned in September of 2019" and contends that "[i]t is reasonable to assume that if the date, which is known to Defendant, fell outside of a relevant statute of limitations, Defendant would have moved on those grounds."  *Id.* at 9.

In any event, Plaintiff has failed to plausibly allege a physical taking relative to the supposed condemnation.  As discussed above, there is no allegation that Defendant has taken physical possession of the property.  With this in mind, the Court notes that, although the amended complaint repeatedly uses the term "condemned," Plaintiff also acknowledges that he remains the property's "owner in fee simple."  Dkt. No. 11 at ¶ 7.  But in New York, a "condemnation" occurs when the municipality formally acquires title to real property (*i.e.*, ownership)—generally through an authorized proceeding pursuant to Article 2 of the Eminent Domain Procedure Law.  *See* Gen. Mun. L. § 74; E.D.P. L. §§ 201 *et seq.*  If Plaintiff remains the current property owner, as he alleges, then it is implausible that any condemnation has occurred, at least as that term is commonly used in the context of municipal and eminent domain law.  *See id.*

Notably, Defendant acknowledges that some act described as "condemnation" indeed occurred.  Dkt. No. 12-1 at 15-18.  Defendant argues that the unnamed municipal actor

responsible for same is immune from suit, as it was a discretionary act. *See id.* Revealingly, the amended complaint asserts that Defendant "condemned" the property in the sense that it "render[ed]" it "unhabitable." Dkt. No. 11 at ¶ 31. Thus, it appears that, at most, Defendant has merely determined that the property is "uninhabitable," and has directed Plaintiff to stop inhabiting it until he makes the necessary repairs. *Id.* Notwithstanding the fact that Plaintiff is uncertain as to when the purported condemnation occurred, considering that there are no allegations that Defendant has taken physical possession, or any property interest, the conduct alleged falls short of a physical taking that would entitle Plaintiff to just compensation.

Accordingly, Plaintiff has failed to plausibly allege a Section 1983 takings claim.

### 2. Substantive and Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. The Due Process Clause contains substantive and procedural protections. *See Zinerman v. Burch*, 494 U.S. 113, 125 (1990). Although the amended complaint does not specify whether Plaintiff is asserting a substantive or procedural due process violation, his memorandum of law invokes arguments addressing both protections. *See* Dkt. No. 15 at 11-15. As such, the Court will discuss both herein.

"The substantive component of the Due Process Clause bars 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Wantanabe Realty Corp. v. City of N.Y.*, 315 F. Supp. 375, 392 (S.D.N.Y. 2003) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). To state a substantive due process claim, a plaintiff must demonstrate that (1) he was deprived of "a valid 'property interest' in a benefit that was entitled to constitutional protection at the time [he] was deprived of that benefit," and (2) that the defendants' actions in depriving him of that interest were "'so outrageously arbitrary as to be a gross abuse of

governmental authority.'" *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) (quoting *Natale v. Town of Ridgefiled*, 170 F.3d 258, 263 (2d Cir. 1999)); *see also Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006) (holding that the plaintiff must establish that the government misconduct was "arbitrary," "conscience-shocking," or "oppressive in the constitutional sense," and not merely "incorrect or ill-advised") (internal quotation marks and citation omitted).

Procedural due process protections generally bar the deprivation of life, liberty, or property without preceding notice and opportunity to be heard. *See Cleveland Bd of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). To prevail on a procedural due process claim, "the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stoney Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)). "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 887, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). In the case of random, unauthorized acts, a due process violation does not occur "so long as the State provides a meaningful postdeprivation remedy." *Id.* (citing *Hudson*, 468 U.S. at 531).

In cases challenging actions of state officials in New York, the Second Circuit has emphasized that "an Article 78 proceeding is a perfectly adequate postdeprivation remedy[.]" *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (citing *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002)). Indeed, even if an Article 78 proceeding would

no longer be available to the plaintiff, the fact that it was previously available satisfies the requirements of due process.  *See Campo v. N.Y.C. Employees' Ret. Sys.*, 843 F.2d 96, 102 n. 6 (2d Cir. 1988).

Herein, the Court finds that the amended complaint fails to state either a substantive or a procedural due process claim.  First, the substantive due process claim fails because the amended complaint does not allege sufficiently arbitrary or shocking conduct.  Plaintiff's arguments in this regard concern only the alleged physical "destruction" and "depredation" of his property by Defendant.  Dkt. No. 15 at 13-15.  If anything, Plaintiff's substantive due process claim is based on the same facts underpinning his negligence claim.  But the Supreme Court has made clear that negligent acts are "categorically beneath the threshold of constitutional due process."  *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).  Thus, Plaintiff has not adequately alleged a substantive due process claim.

Second, the procedural due process claim fails because, as Defendant argues, an Article 78 proceeding was available to Plaintiff, whether he utilized it or not.  *See* Dkt. No. 12-1 at 13-14. In response, Plaintiff reiterates that he received "no pre-deprivation notice of any kind," and seemingly acknowledges that the relevant statute of limitations for an Article 78 has expired.  *See* Dkt. No. 15 at 16-17.  While the Court accepts as true that Plaintiff received no pre-deprivation notice, in light of the well-settled case law affirming the adequacy of Article 78 as a post-deprivation remedy, Plaintiff's procedural due process claim fails as a matter of law.

Accordingly, Plaintiff has failed to plausibly allege a due process claim under the U.S. Constitution.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Ordinarily, equal protection claims arise from allegations that the government's classifications "treat certain groups of citizens differently than others." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221 (2d Cir. 2012) (citation omitted). "A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'" *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011) (citing *Cobb v. Pozzi*, 363 F.3d 89, 109-10 (2d Cir. 2004)).

To state an equal protection claim based upon selective enforcement, the plaintiff must plead that: "(1) they were 'treated differently from other similarly situated' individuals and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Butler v. City of Batavia*, 323 Fed. Appx. 21, 22 (2d Cir. 2009) (quoting *Cine SK8, Inc., v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007)). To satisfy the first element, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014). While the comparators need not be "identical," the plaintiff must show "that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Hu v. City of N.Y.*, 927 F.3d 81, 96 (2d Cir. 2019).

"Under a 'class-of-one' equal protection claim, a plaintiff must allege that (1) '[he] has been intentionally treated differently from others similarly situated' and (2) there is no rational basis for the difference in treatment.'" *Young v. Suffolk County*, 705 F. Supp. 2d 183, 205 (E.D.N.Y. 2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

> [C]lass-of-one plaintiffs must show an extremely high degree of
> similarity between themselves and the persons to whom they
> compare themselves.  Accordingly, to succeed on a class-of-one
> claim, a plaintiff must establish that (i) no rational person could
> regard the circumstances of the plaintiff to differ from those of a
> comparator to a degree that would justify the differential treatment
> on the basis of a legitimate government policy; and (ii) the
> similarity in circumstances and differences in treatment are
> sufficient to exclude the possibility that the defendants acted on the
> basis of mistake.

*Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58-60 (2d Cir. 2010) (citing *Village of Willowbrook*, 528 U.S. at 564; *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (internal quotation marks omitted)).

Herein, the Court finds that Plaintiff has failed to plausibly allege either a selective enforcement claim or a class-of-one claim under the Equal Protection Clause.  The amended complaint is silent as to any comparators; thus, Plaintiff has failed to identify any similarly situated individuals, which is a necessary pleading requirement under both theories.  *See Hu*, 927 F.3d at 99-102.

Even assuming Plaintiff plausibly alleged as much, he has also failed to show that the conduct at-hand "represent[ed] the conscious choices of the municipality itself," as is necessary to state a *Monell* claim.  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Plaintiff's dispute concerns an unnamed resident who is purportedly friends with an unnamed city employee.  *See* Dkt. No. 11 at ¶¶ 43-48.  Such allegations do not equate to a formal policy or a persistent widespread practice, as required to establish municipal liability under *Monell*.[1]   And "[a]s courts have held, a singular, isolated event—a failure to discipline a subordinate for

---

[1]  In his memorandum of law, Plaintiff states, in no uncertain terms, "[t]he claim is that [Plaintiff] was singled out by a municipal employee as a favor to a friend believed to be a neighbor of Plaintiff's upset with the tenant at the time of the condemnation[.]" Dkt. No. 15 at 18.

misconduct—is insufficient to permit *Monell* liability." *Kuiken v. County of Hamilton*, — F. Supp. 3d — , 2023 WL 2984420, * 7 (N.D.N.Y. Apr. 18, 2023) (collecting cases).

Accordingly, Plaintiff has failed to state a selective enforcement or class-of-one equal protection claim under the U.S. Constitution..

## C.    Supplemental Jurisdiction

Having dismissed Plaintiff's Section 1983 claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state constitution and common law claims. *See Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (holding that the district court had discretion to decline exercising supplemental jurisdiction over state law claims since all claims over which the court had original jurisdiction were dismissed).  "When a district court declines to exercise supplemental jurisdiction in a case removed from State court, it has discretion either to dismiss the claims without prejudice or to remand the claims." *Bhattacharya v. SUNY Rockland Comm. Coll.*, 719 Fed. Appx. 26, 28 (2d Cir. 2017) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).  As such, without making any ruling as to their merit, the Court declines to exercise supplemental jurisdiction over the state law claims and remands this matter to State Court for further proceedings.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 12) is **GRANTED** in part and **DENIED** in part; the Court further

**ORDERS** that Plaintiff's Section 1983 claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that Plaintiff's remaining State law claims **SURVIVE** and are **REMANDED** to the Supreme Court of the State of New York, Ulster County; and the Court further

**ORDERS** that the Clerk of the Court shall remand this case to the Supreme Court of the State of New York, Ulster County; and the Court further

**ORDERS** that the Clerk of the Court shall close this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon all parties in accordance with the Local Rules;

**IT IS SO ORDERED.**

Dated:  June 21, 2023
       Albany, New York

Mae A. D'Agostino
U.S. District Judge